UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Leon Martin, | Case No. 20-cv-2280 (SRN/ECW) |
| Petitioner, | |
| v. | ORDER AND<br>REPORT & RECOMMENDATION |
| J. Fikes, | |
| Respondent. | |

This matter is before the Court on Leon Martin's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 1) ("Petition") and Petitioner's Motion for Leave to Supplement (Dkt. 7). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court grants the Motion for Leave to Supplement and recommends that the Petition be denied.

I. BACKGROUND

A. Factual Background

On October 23, 1997, Petitioner was arrested by federal authorities pursuant to a fugitive warrant issued by the Superior Court for the District of Columbia, for the D.C. Code offense of Murder committed on August 27, 1997. (Dkt. 16 ¶ 5; Dkt. 16-2 at 2.) Petitioner was detained by federal authorities until October 31, 1997, and then transferred to the primary custody of the District of Columbia, where he was held pending disposition. (*See* Dkt 16-2; Dkt. 16-3.)

Pursuant to Paragraph 19 of the "Post Sentence Report Case No. 98-00209-A, United States District Court for the Eastern District of Virginia Court," Petitioner was named in a single count Criminal Information on June 2, 1998, charged with Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime.[1]  (Dkt. 16 ¶ 6.)

On June 2, 1998, pursuant to a writ, Petitioner was transferred from the custody of the District of Columbia to the Eastern District of Virginia.  (*Id.* ¶ 7; Dkt. 16-2 at 3.)

On the same day, Petitioner was sentenced in the U.S. District Court for the Eastern District of Virginia to a 60-month term of imprisonment for Use and Carry a Firearm During and in Relation to a Drug Trafficking Crime in Case No. 1:98-CR00209-001.  (Dkt. 16 ¶ 8; Dkt. 16-4 at 2.)  The court also ordered that the sentence imposed shall run consecutive to any other state or federal sentence.  (Dkt. 16-4 at 2.)  Petitioner was returned to the District of Columbia following sentencing.  (Dkt. 16-2 at 3.)

On June 2, 2000, Petitioner was also sentenced in the Superior Court for the District of Columbia to a life term of imprisonment with a 20-year minimum term, for the D.C. Code felony offense of Murder II While Armed with Pistol (Count G), and a 5-to-15-year term of imprisonment, for Possession of a Firearm During a Crime of Violence (Count C), in Case No. F-8768-97.  (Dkt. 16 ¶ 9; Dkt. 16-5.)  The D.C. Superior Court ordered Counts G and C to run concurrent with each other and consecutive to any other sentence.  (*Id.*)

---

[1] This document was not attached as an exhibit but is described in a declaration made under penalty of perjury in support of Respondent's response to the Petition.  (Dkt. 16 ¶ 6.)

Pursuant to BOP Program Statement 5880.33, *District of Columbia Sentence Computation Manual*; BOP Program Statement 5880.28, *Sentence Computation Manual (CCCA of 1984)*; and 18 U.S.C. § 3585(a), the sentence for Petitioner's D.C. Code conviction commenced on June 2, 2000, the date of his sentencing given that he was already in custody. (*See* Dkt. 16 ¶¶ 10-11; Dkt. 16-1 at 2-3; Dkt. 16-6 at 5; Dkt. 16-7 at 1-2.)

Because Petitioner's D.C. Code offenses were committed after June 22, 1994, but before August 5, 2000, it was determined by the Bureau of Prisons ("BOP") that Petitioner was not eligible to receive D.C. Institutional Good Time on his D.C. Code sentence. (Dkt. 16 ¶¶ 12-13; Dkt. 16-6 at 7-9.) However, Petitioner was eligible for and did receive 35 days of educational good time credit, as well as 953 days of credit for time spent in custody from October 23, 1997 (the date of his arrest) through June 1, 2000 (the day before his D.C. sentence commenced). (Dkt. 16 ¶¶ 14-16; Dkt. 16-1 at 3; Dkt. 16-6 at 3, 6; Dkt. 16-8.)

Based on the commencement of the sentence and the credits assessed, Petitioner's parole eligibility date was initially calculated as September 17, 2017, based on a term of 20 years commencing on June 2, 2000, less 953 days of jail time credit and 35 days of educational good time earned. (Dkt. 16 ¶ 17.)

Petitioner was paroled from his D.C. offense sentence by the U.S. Parole Commission ("USPC") effective on May 22, 2018, to the consecutive 60-month federal sentence he is currently serving. (Dkt. 16 ¶¶ 18-19; Dkt. 16-9.) Petitioner's projected release date is August 24, 2022, via a good conduct time release. (Dkt. 16 ¶ 4; Dkt. 16-1

at 1.)

Subsequently, the D.C. Emergency Amendment Act of 2020, effective August 19, 2020, amended D.C. Code § 24-403.01a to allow for D.C. Omnibus inmates to be retroactively awarded good time credits under the provisions of 18 U.S.C. § 3624(b). (Dkt. 16 ¶ 20; Dkt. 16-10.) Pursuant to this amendment, the BOP retroactively applied 1,080 days of good time credit (20 years times 54 days credit) toward Petitioner's D.C. sentence. (Dkt. 16 ¶¶ 20-21.) As a result of this additional credit, Petitioner's parole eligibility date was recalculated to October 3, 2014. (Dkt. 16 ¶ 20; Dkt. 16-1 at 3.)

There is no indication in the record that the USPC has issued an earlier parole effective date *nunc pro tunc*.[2]

**B.    Petition and Supporting Materials**

Based on the Petition, Petitioner's Supplemental Brief, and Petitioner's Reply, the Court discerns that Petitioner is arguing that the commencement date of his federal sentence has been miscalculated given the 1,080 days of retroactive good time credit afforded to him under D.C. Code § 24-403.01a. (Dkt. 1 at 6-8; Dkt. 6; Dkt. 18 at 1-3.) Petitioner also asserts as a part of his supplemental brief[3] that he is entitled to relief with

---

[2]    The Court notes that while Petitioner's projected release was August 24, 2022, the BOP inmate locator indicates that Petitioner is presently scheduled for release on August 24, 2021. *See* https://www.bop.gov/inmateloc/ (last visited May 27, 2021). However, there is no indication as to why the BOP inmate locator reports a release date that is a year earlier than the August 24, 2022 date set forth in the materials filed in support of Respondent's response (*see* Dkt. 16 ¶ 4; Dkt. 16-1 at 1).

[3]    Petitioner filed his Supplemental Brief (Dkt. 6) and Exhibit (Dkt. 8) along with his Motion for Leave to Supplement well before Respondent's response. Given that Respondent has had an opportunity to respond to the supplemental brief, the Court grants

4

respect to the credits at issue because he could not have been paroled effective on May 22, 2018 as asserted by Respondent, because he was never provided with a parole certificate as required by law. (Dkt. 6 at 1-2.) In sum, Petitioner asserts that based on the good time credits he "should have been granted parole in 2015" as opposed to May 22, 2018.[4] (Dkt. 18 at 3.)

## II.   ANALYSIS

"Writs of habeas corpus may be granted by the Supreme Court . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

On August 5, 1997, Congress enacted the National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11,231, 111 Stat. 251 (1997) ("Revitalization Act"). "'The Revitalization Act abolished the D.C. Parole Board and directed the USPC to conduct parole hearings for D.C. Code offenders pursuant to the parole laws and regulations of the District of Columbia.'" *Fisher v. Fulwood*, 774 F. Supp. 2d 54, 55-56 (D.D.C. 2011) (emphasis added) (quoting *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68 (D.D.C. 2008) (internal citations and quotation marks omitted)); *see also* D.C. Code § 24-131(c) ("The Parole Commission shall exercise the authority vested in it

---

the Motion for Leave to Supplement and has considered the Supplemental Brief and Exhibit as part of this Report and Recommendation.

[4]    Petitioner also raised a separate ground (Ground Two) in the Petition for relief on the basis of his post-conviction rehabilitation, but has provided no legal authority under the Constitution or any other law for relief on such a basis. *See* 28 U.S.C. § 2241(c)(3).

5

by this section pursuant to the parole laws and regulations of the District of Columbia . . . ."); *Kelvin J.M. v. Birkkholz*, No. 19-cv-884 (ECT/ECW), 2020 WL 1191015, at *4 (D. Minn. Jan. 24, 2020) (noting that the U.S. Parole Commission has "jurisdiction and authority . . . to grant and deny parole . . . [to] any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code") *R.&R. adopted*, 2020 WL 1187425 (D. Minn. Mar. 12, 2020).

> Under District of Columbia law, the legal standard for parole is as follows:
>
> Whenever it shall appear to the United States Parole Commission ("Commission") that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his or her release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence, as the case may be, the Commission *may* authorize his or her release on parole upon such terms and conditions as the Commission shall from time to time prescribe.

D.C. Code § 24-404(a) (emphasis added).

The statute's use of the word "may" supports a finding that the statute is "phrased 'in discretionary terms.'" *Bailey v. Fulwood*, 793 F.3d 127, 132-33 (D.C. Cir. 2015) (quoting *McRae v. Hyman*, 667 A.2d 1356, 1360 (D.C. 1995)). "In deciding whether to parole a prisoner, first the D.C. Board and now the USPC must use its discretion to determine 'whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether release on parole is consistent with the public safety.'" *Henry v. Stansberry*, No. 1:10CV1358 TSE/IDD, 2011 WL 3206838, at *5 (E.D. Va. July 27, 2011) (quoting *White v. Hyman*, 647 A.2d 1175, 1179 (D.C. 1994)).

6

Indeed, courts have held that given the complete discretion to determine when a prisoner is suitable for release, courts cannot review the merits of the USPC's decision to deny parole. *See*, *e.g.*, *Bogan v. D.C. Bd. of Parole*, 749 A.2d 127, 129 (D.C. 2000) ("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision."); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. 1996) ("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision.") (quotation marks and citations omitted).

Moreover, "'it is established that D.C. prisoners do not have a constitutionally protected liberty interest in being released to parole.'" *Rious v. U.S. Parole Comm'n*, 183 F. Supp. 3d 170, 173 (D.D.C. 2016) (quoting *Johnson v. District of Columbia*, 67 F. Supp. 3d 157, 164 (D.D.C. 2014), *aff'd*, 927 F.3d 539 (D.C. Cir. 2019)); *see also Ellis v. D.C.*, 84 F.3d 1413, 1415 (D.C. Cir. 1996) ("[T]he Constitution itself does not create any liberty interest in parole," and "such an interest must emanate from state law, or in this case, District of Columbia law.") (citation omitted); *Boling v. U.S. Parole Comm'n*, No. 17-5285, 2018 WL 6721354, at *1 (D.C. Cir. Dec. 19, 2018) (citing *Ellis*, 84 F.3d at 1415; D.C. Code § 24-404) ("due process claim fails because neither the Constitution nor D.C. law creates a due process liberty interest in parole"), *cert. denied*, 140 S. Ct. 268 (2019); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1059 (D.C. Cir. 1998) ("Anyanwutaku has failed to allege that he has been deprived of a protected liberty interest, the first element of any due process claim. D.C. law creates no liberty interest in a parole eligibility date, much less one within sixty days of incarceration, since misdemeanants

7

must serve one-third of their aggregate sentences before being considered for parole, *see* D.C. Code Ann. § 24–208(a).").

In sum, even assuming that Petitioner had the benefit of the earlier parole eligibility date of October 3, 2014 before being paroled from his D.C. sentence, whether he would have been released earlier on parole, as he now claims (or for that matter entitled to a *nunc pro tunc* adjustment of his parole effective date), amounts to speculation given the discretion afforded to the USPC and that he "is not entitled to a particular release date or to parole eligibility on a date certain, as there is 'no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'"[5] *Jordan v. United States*, 235 A.3d 808, 825 (D.C. 2020) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)). Indeed, while his initial parole eligibility date was September 17, 2017, Petitioner was not paroled from his D.C. sentence until May of 2018. (Dkt. 16 ¶¶ 17-19; Dkt. 16-9.) Moreover, this Court does not have the authority to award Petitioner an earlier parole effective date and thereby an earlier date that his federal sentence currently being served commenced, as "courts are without power to grant a parole or to judicially determine eligibility for parole . . . ." *Brest v. Ciccone*, 371 F.2d 981, 982-83 (8th Cir. 1967) (citing *Cagle v. Harris,* 349 F.2d 404, 405 (8th Cir. 1965)) (citation omitted). Indeed, as previously stated, "[i]t is the Commission, not the Court, which has the 'power

---

[5] Because Petitioner was serving an indeterminate D.C. Code life sentence without a specified end date (*see* Dkt. 16-5, Ex. E (imposing sentence of 20 years to life on Count G)), he did not have an automatic discharge date that would have been affected by the 1,080 days of retroactive good time credit.

8

to grant a parole or to judicially determine eligibility for parole.'" *Darden v. U.S. Parole Comm'n*, 61 F. Supp. 3d 68, 73 (D.D.C. 2014) (quoting *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2d Cir.1976), citing *Brest*, 371 F.2d 981 at 982-83).

Petitioner also argues that he should be afforded relief because he was never provided with a parole certificate as required by the USPC's Rule 2.29. (Dkt. 6; Dkt. 18 at 3.) The Court assumes that Petitioner is referring to 28 C.F.R. § 2.29(a), which provides that a "grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner." 28 C.F.R. § 2.29(a).[6] Here, Petitioner's own sentence computation exhibit, as well as Respondent's Notice of Action (Dkt. 16-9) shows that the effective date of his parole from his D.C. sentence was May 22, 2018 and that the commencement of the Federal Sentence, for the purposes of his release, that he is currently serving is also May 22, 2018. (Dkt. 19 at 2, 5.) Even assuming that he was not provided with a certificate of parole on May 22, 2018, the Court does not know what sort of relief would be afforded to Petitioner. The Court assumes that Petitioner does not want to still be subject to the D.C. sentence awaiting a parole decision, which could result in a much latter commencement of his current federal sentence.

## C.   Conclusion

For all of the reasons stated above, the Petition should be denied.

---

[6]   The Court notes that 28 C.F.R. § 2.86 would apply to Petitioner as a parolee of a sentence imposed by the District of Columbia. However, the language requiring a certificate of parole is similar to that set forth in § 2.29(a). *See also* D.C. Code § 24-131 (providing USPC with rule-making authority).

9

### III.  ORDER

Based upon on the Motion for Leave to Supplement and the supporting brief and exhibit, as well as all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that: Petitioner's Motion for Leave to Supplement (Dkt. 7) is **GRANTED**.

### IV.  RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 1) be **DENIED**.

2. Petitioner's request for a hearing be **DENIED**; and

3. The Petition be **DISMISSED WITHOUT PREJUDICE**.


DATED: May 27, 2021					*s/Elizabeth Cowan Wright*
							ELIZABETH COWAN WRIGHT
							United States Magistrate Judge

10

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).